IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BIOVERIS CORPORATION          :

   v.                         :   Civil Action No. DKC 2004-2264

                                            :

ALAN D. JERNIGAN
                                            :

**MEMORANDUM OPINION**

Alan Jernigan has filed objections to the Report and Recommendation of Magistrate Judge William Connelly ("Report"), to whom the case was referred to determine damages after entry of default. Paper 30. Defendant's objections to the Report are overruled and the proposed findings and conclusions are accepted.

**I.  Standard of Review**

The undersigned is required to make a *de novo* determination. As recently reviewed by the Fourth Circuit:

> The Federal Magistrates Act requires a district court to "make a *de novo* determination of *those portions* of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1) (West 1993 & Supp.2005) (emphasis added); *accord* Fed.R.Civ.P. 72(b) ("The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, *of any portion* of the magistrate judge's disposition to which *specific written objection has been made* ....") (emphases added). By contrast, in the absence of a timely filed objection, a district court

> need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72 advisory committee's note.

*Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Judge Connelly conducted a hearing, heard testimony, and admitted exhibits. The undersigned has listened to a recording of the hearing and reviewed the exhibits received in evidence. Upon completion of the review, the court: "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C.A. § 636(b)(1). In this circuit, the court is obligated to consider arguments presented regardless of whether they were presented before the magistrate judge:

> We believe that as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate. By definition, *de novo* review entails consideration of an issue as if it had not been decided previously. It follows, therefore, that the party entitled to *de novo* review must be permitted to raise before the court any argument as to that issue that it could have raised before the magistrate. The district court cannot artificially limit the scope of its review

>        by resort to ordinary prudential rules, such
>        as waiver, provided that proper objection to
>        the magistrate's proposed finding or
>        conclusion has been made and the appellant's
>        right to *de novo* review by the district
>        court thereby established. Not only is this
>        so as a matter of statutory construction;
>        any other conclusion would render the
>        district court's ultimate decision at least
>        vulnerable to constitutional challenge. *See
>        United States v. Raddatz*, 447 U.S. 667, 683,
>        100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980)
>        (holding that "delegation" to a magistrate
>        "does not violate Art. III *so long as the
>        ultimate decision is made by the district
>        court*" (emphasis added)); *cf. United States
>        v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985)
>        ("*[D]e novo* review of a magistrate's report
>        is both statutorily and constitutionally
>        required."); *United States v. Elsoffer*, 644
>        F.2d 357, 359 (5th Cir. 1981) ("The authority
>        to grant or deny a motion to suppress must
>        be retained by a judge appointed pursuant to
>        Article III of the Constitution.").

*United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)(footnotes omitted.)

Alan Jernigan objects to the Report by reference to paragraph numbers and to the factual findings in ¶¶ 6, 7, 9, 10, 11, 12, 15, 16, 17, 18, 20, 21, and 23. Ultimately, Mr. Jernigan objects to any recommendation that judgment be entered against him.

Mr. Jernigan first asserts that he did not breach the employment agreement between himself and BioVeris and thus is not obligated to pay for any losses. By failing to answer the

3

complaint, the well-pled allegations as to liability are taken as true and he may no longer dispute them.  Upon default, Mr. Jernigan may only challenge the allegations as to damages.  *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2688 at 58-59 & n.5 (3rd ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *United States v. Di Mucci,* 879 F.2d 1488, 1497 (7th Cir. 1989).

**II.  Background**

The entry of default established that BioVeris employed Alan Jernigan from September 30, 2002, until June 15, 2004, as Director of Training, and that he entered into a written agreement with BioVeris, "Employee Non-Disclosure and Non-Solicitation Agreement" ("Agreement"), to safeguard the confidential and proprietary information of BioVeris.  Mr. Jernigan violated the Agreement while in the employ of BioVeris by developing a scheme, with Gerald Andros, to exploit Plaintiff's confidential information for their own financial gain.  They created a separate company and misrepresented to the outside world the relationship of that company with Plaintiff, falsely claiming that it was a subsidiary of BioVeris.  Through their new company, Jernigan and Andros used Plaintiff's

4

confidential and proprietary information for their own gain, without Plaintiff's permission.  Further, they used Plaintiff's property, including computer data, equipment, telephone, cellular phone, Internet service, electronic mail, and company-provided residences in furtherance of their scheme.

### III.     Analysis

The complaint asserts entitlement to damages for breach of contract, unfair competition-misappropriation of confidential or proprietary information, unfair competition-breach of covenant not to solicit, and torious interference with economic relations-existing and prospective.  Each count seeks $250,000 in damages, plus costs.  Prior to removal, the parties entered into a consent preliminary injunction, and Plaintiff is not seeking injunctive relief at this time.

> In Maryland, a party suffering a breach of contract is entitled to recover as damages the amount that would place him in the position he would have been in had the contract not been broken. *National Micrographics Systems, Inc. v. OCE-Industries, Inc.*, 55 Md.App. 526, 532, 465 A.2d 862, 867 (1983), *cert. denied*, 298 Md. 395, 470 A.2d 353 (1984). Thus, the injured party is able to realize his expectations from the contract had there been no breach.

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 506 (4th Cir. 1986)(footnote omitted.)  Furthermore,

5

> The measure of damages for breach of contract under Maryland law is that set forth in *Sloane, Inc. v. House & Associates*, 311 Md. 36, 42, 532 A.2d 694 (1987):
>> [T]he injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform (citing Restatement (Second) of Contracts § 347 (1981) (emphasis added)).

*Fowler v. Printers II, Inc.*, 89 Md.App. 448, 472-73, 598 A.2d 794, 805-06 (1991). With regard to an employment contract: "The measure of damages for breach of an employment contract by an employee has frequently been stated to be the cost of obtaining other services equivalent to that promised and not performed." H.B. Chermside, Jr., Annotation, *Employer's Damages for Breach of Employment Contract by Employee's Terminating Employment*, 61 A.L.R.2d 1008 § 3 (2004). One appropriate measure of damages, then, for breach of this employment contract, is the amount paid to Defendant for services that were not rendered by him: either this is the amount Plaintiff would have had to pay another to perform the services expected from Defendant, or, in this case

more precisely, the amount Plaintiff paid for services it did not get.

The only witness presented at the damages hearing was Cynthia Whitman, Manager of Human Resources.  She testified that BioVeris was seeking damages in the form of a portion of the compensation paid to Mr. Jernigan during the last twelve weeks of his employment when Plaintiff contends he was using Bioveris's resources for his own purposes.  Plaintiff also seeks to recoup a portion of the cost of equipment and amenities it provided to Mr. Jernigan to help him render services.

Ms. Whitman testified that BioVeris reviewed Mr. Jernigan's activities and concluded that his conduct in breach of his agreements with the company began at least on or about March 24, 2004, and continued until his termination on June 15, 2004.  A review of the e-mail traffic Mr. Jernigan conducted showed that 81% of e-mails sent and received were related to Mr. Jernigan's separate, improper business activity.  Using the 81% figure, Plaintiff seeks to recoup salary paid during those twelve weeks, the value of other benefits conferred, rent and other expenses spent on an apartment leased for Mr. Jernigan's use,[1] cellular

---

[1] Three employees shared the apartment.

phone service, depreciation on a laptop computer, and attorneys' fees.  The total sought is in the neighborhood of $71,500.[2]

In essence, Plaintiff is seeking as damages those costs for salary and other benefits conferred on Mr. Jernigan for which Plaintiff claims it received no service from him.  Plaintiff contends that, based on the e-mail traffic, Mr. Jernigan spent less than 20% of his time on BioVeris work during the last twelve weeks he was on the payroll.

Mr. Jernigan disputes the 81% figure, but does not state why that calculation is incorrect.  He also states that he had permission for personal use of the laptop computer "as instructed by his superior Mr. Gerry Andros, due to the fact that Mr. Jernigan was away from his primary residence of 1220 Copper Hill Circle, Argyle, TX 76226 and needed to communicate with his household as well as handle any personal business affairs arising therewith."  Paper no. 34, at 1.  Mr. Jernigan thought he had permission to use the computer for personal use "as long as it did not interfere with his duties and performance with BioVeris."  *Id*. at 1-2.  He claims that the percentage of usage was 75% BioVeris and 25% personal.  Mr. Jernigan's assertions are belied by the testimony and finding of liability

---

[2] In its response to Defendant's objections, Plaintiff seeks the additional attorneys' fees incurred since the hearing before Magistrate Judge Connelly.

8

arising from his default.  The court will use the 81% figure to allocate the damages.

With regard to fringe benefits, Mr. Jernigan claims that he paid some of the cost of the benefits.  In response, Plaintiff points out that the Plaintiff's calculation of the fringe benefit amount, 21% of Defendant's gross salary, includes only those costs borne by Plaintiff, and not the amounts paid by Mr. Jernigan.  With regard to the apartment, Mr. Jernigan claims that he did not sign the lease for the apartment and should not have to repay Plaintiff for the rental, and that Plaintiff made the choice to terminate the lease early.  Whether Defendant would personally have been obligated on the lease is irrelevant.  Plaintiff expended this money in order to provide a place for Defendant, and the two others, to live when engaged in full-time work on Plaintiff's behalf.  Like the other expenses, a portion of the apartment rental is properly recoverable.  The penalty for early termination is also a proper damage.  Plaintiff had to pay that amount in order to be released from the obligation to pay rent for the remainder of the original lease.

Defendant contends that the cell phone was given to him to use for personal use and that he had permission to use it "as long as it did not become outrageous in the cell phone bill."  Paper no. 34, at 2.  Once again, the permission for Mr. Jernigan

9

to use the phone was contingent on him devoting his full time and energy on Plaintiff's behalf. Finally, Defendant argues that depreciation of the laptop should be a normal business expense, when he was authorized to use it for both business and personal efforts. Although not as easy to fit within the damage calculation as the other items, because it would be difficult to split a single laptop computer between more than one employee at the same time, this expense was nevertheless a cost to Plaintiff for which it did not receive services.

Defendant does not specifically challenge the amount sought for attorneys' fees and recommended by Magistrate Judge Connelly. Those fees have now increased, due to the work devoted to the damages hearing and answering Defendant's objections. An additional $4,065.50 is substantiated by the declarations and exhibits attached to Plaintiff's response.

10

**IV. Conclusion**

In light of the foregoing discussion, Defendant's objections to the Report are OVERRULED and the proposed findings and conclusions are ACCEPTED. With the additional attorneys' fees, the total damages to be awarded are: $ 75,546.36. A separate order will be entered.

```
                                    /s/
                          DEBORAH K. CHASANOW
                          United States District Judge
```

September 13, 2005